Bupfif, J.
 

 The case is to be treated as if the instruction had been, that there was no evidence on which the jury could find a delivery, and if it had been, it seems to this Court, that it would have been right. The bond was executed for the purpose of raising money on loan, from Whichard, and if he had lent the money and accepted the bond, when offered to him, no doubt it would have been a good bond, and it may be, that if there had afterwards been an actual transfer of the possession of the bond to Whichard, it might, by force of the sealing and delivery, have become effectual as a bond. But on that point, no opinion is called for in this case: There is no direct evidence of what actually occurred between Jordan and the plaintiff, or indeed, that there was an interview between them. On that point all the information consists of the representation by Jordan to Stephens; and that certainly repels the notion of a delivery before that time, to Whichard. It is clear, it was not intend-to deliver the bond to him, unless he would lend the money. BTo gift of the bond to him was meant, but only that it should be a security for what he should advance on it. Therefore, when he refused to make any advance of money, and did not take the bond, but it was kept by Jordan, it is manifest that no delivery was then made or meant of the bond, which
 
 *56
 
 "Whichard had substantially rejected. The subsequent transactions as little import a delivery to the obligee named in the instrument. Stephens was not the agent of "Whichard, and, therefore, the possession taken by him, was not
 
 ipso facto
 
 a delivery to the latter. The delivery to a stranger, to become a delivery to the party, most be a delivery for the use or benefit of the party, and not rejected, but accepted by the party. It is impossible to imply that the delivery to Stephens was of that character. On the contrary, it was made to Stephens for his security and use, and was accepted by him under the mistaken notion, no doubt, that a deed to one person may be delivered to another for the benefit of the latter, exclusively, and be effectual, without the concurrence of the former. As that was the nature of the delivery, it would seem that a subsequent assent of "Whichard would be immaterial, lie taking no benefit from the instrument, and intending to take none. But there is no evidence of a subsequent assent. The recital of the debts, in the deed of trust, to which he was a party, does not amount to it. "We are not considering, now, of remedies under the deed, upon the footing of the trusts declared in it. But the enquiry is, whether the fact that Which-ard is a party as trustee to the deed, is evidence that a paper, purporting to be a bond, originally payable to him, which is mentioned in the deed, and in which he had no interest, was actually delivered to him or to another for him. Now, there is no recital in the deed of the delivery as a fact. But it is mentioned only as a part of the description of a security for a debt to Stephens, which it was Intended to secure to him, and that the note, therefor, was originally payable to Whichard,and was then held by Stephens. From that, there can be no implication of a delivery to Whichard, or to Stephens for him, but it is rather to be deduced that the delivery, if any, was to the latter for his own use. In this point of view the case is even stronger against the plain tiff than it was in
 
 Parker
 
 v. Latham, where, after refusal of the bond, by the obligee, it was sent to her by one of the obligors, with the request that she would endorse it, and she endorsed to Respass. But the Court held that after she refused once,
 
 *57
 
 it could not become tbe deed of the other obligors, the sureties, without an actual second delivery by them. It is to be observed also, that the force of the argument on this point, wholly fails, as the deed describes the instrument as a note, and not as a bond.
 

 -Pee CtJRiAM, Judgment affirmed.